# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| SHEILA SCHMITZ, Individually and on Behalf of All Others Similarly Situated, | Case No.: 17-cv-365 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| ACCOUNT CONTROL SYSTEMS, INC. and AMERIMARK DIRECT, LLC, | **Jury Trial Demanded** |
| Defendants. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Sheila Schmitz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5. Defendant Account Control Systems, Inc. ("ACS") is a foreign corporation with its primary offices located at 85 Chestnut Ridge Rd., Suite 113, Montvale, New Jersey 07645.

6. ACS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. ACS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. ACS is a debt collector as defined in 15 U.S.C. § 1692a.

8. Defendant Amerimark Direct, LLC ("Amerimark") is a foreign limited liability company with its primary offices located at 6864 Engle Road, Cleveland, Ohio 44130.

9. According to its website, Amerimark "is a leading direct marketer of women's apparel, shoes, name-brand cosmetics, fragrances, jewelry, watches, accessories, and health-related merchandise." https://www.amerimark.com/ am_aboutus.html

10. Amerimark conducts significant business in the State of Wisconsin.

11. Amerimark is a "merchant," as that term is defined in Wis. Stat. § 421.301(25).

12. Amerimark used to offer a form of store credit called the "Premier Easy Pay Plan." ("Premier Plan"). Amerimark has since discontinued the Premier Plan.

13. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

14. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

2

15. The Western District of Wisconsin has also noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

16. Amerimark, both directly and indirectly, actively collects debts that are allegedly owed to Amerimark and incurred pursuant to the Premier Plan.

17. Amerimark regularly mails bills and letters seeking payment to consumers, and also hires debt collectors such as ACS to collect debts on Amerimark's behalf.

18. Amerimark is a debt collector as that term is defined in Wis. Stat. § 427.103.

## FACTS

### *Amerimark Letters*

19. Plaintiff allegedly purchased household goods on credit from Amerimark, in summer 2016.

20. Plaintiff financed the purchase pursuant to the Premier Plan.

21. The credit obtained was for less than $25,000, and was not incurred for anything other than personal or household use.

22. In or around mid-October 2016, Amerimark mailed a debt collection letter to Plaintiff regarding the alleged debt. A copy of the letter is attached as Exhibit A.

23. As of October 2016, the total due was allegedly $187.20. Exhibit A.

24. Exhibit A sought to collect a $1.00 "LATE CHARGE," and a "finance charge" of $3.02.

25. Exhibit A also states that the "minimum payment due" is $140.00.

26. On or around November 14, 2016, Amerimark mailed a debt collection letter to Plaintiff regarding the same alleged debt referenced in Exhibit A. A copy of this letter is attached as Exhibit B.

3

27. Exhibit B included a "new balance" of $191.22. This amount included another $1.00 "LATE CHARGE," and another "finance charge" of $3.02.

28. Exhibit B also states that the "minimum payment due" is $160.00.

29. The second late charge is attributed to the same alleged debt as the first late charge.

30. Chapter 427 of the Wisconsin Statutes, part of the Wisconsin Consumer Act, regulates debt collectors and debt collection activities. The statute reads, in relevant part:

> **427.104 Prohibited Practices. (1)** In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction, … where there is an agreement to defer payment, a debt collector may not …
>
> j. Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist; …

31. Upon information and belief, nothing in any alleged agreement between Plaintiff and Amerimark allows a second late fee on a single account. Exhibits A, B.

32. Upon information and belief, it is Amerimark's regular practice to add multiple late fees to allegedly delinquent consumer accounts, despite that neither the underlying contract nor Wisconsin law, permit this action.

33. Amerimark knew or should have known that it had no basis to add a second late fee to a single balance.

34. Moreover, the "finance charge" did not change even though the balance changed between Exhibits A and B.

35. The unsophisticated consumer would have no idea why the finance charge, described elsewhere on Exhibits A and B as "interest," did not increase as the balance increased.

4

*ACS Letter*

36. On or about November 14, 2016, ACS mailed a debt collection letter to Plaintiff regarding the same alleged Amerimark account referenced in Exhibits A and B. At copy of this letter is attached to this complaint as Exhibit C.

37. Exhibit C states in two places that the "TOTAL DUE" to Amerimark is $191.22.

38. Plaintiff did not make any payment to ACS, Amerimark or anyone else, in the time period between one month before Amerimark and ACS sent Exhibits B and C, respectively, and the present.

39. Exhibits B and C misrepresent the actual amount of the debt.

40. Exhibit C says the "TOTAL DUE" is $191.22, but Exhibit B, which was sent to Plaintiff at about the same time, says the "Minimum Payment Due" on the same account $160.00, despite the fact that Plaintiff did not make any payment to Amerimark, ACS, or any other debt collector towards the Amerimark account.

41. Exhibit C, thus, represents that the debt had been accelerated and the full balance is now due, while Exhibit B represents that a lesser amount is actually due. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much is actually due.

42. The unsophisticated consumer would be confused as to the amount owed.

43. Such misrepresentations are material because they mislead the unsophisticated consumer about the amount and character of the debt. 15 U.S.C. § 1692e(2)(a).

44. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." If ACS is truly collecting only the past-due amount (i.e. the "minimum payment due") of $160.00 in order to bring Plaintiff's account

5

Case 2:17-cv-00365-LA    Filed 03/10/17    Page 5 of 10    Document 1

current, it need only state that amount in the letter. By stating two conflicting amounts, the unsophisticated consumer would not be able to determine, or would be confused as to, what amount ACS and Amerimark were actually attempting to collect. Exhibits B, C.

45. Failure to provide the correct validation notice pursuant to 15 U.S.C. § 1692g(a) is a *per se* violation of the FDCPA. No analysis of materiality of the error or omission is required. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

46. Plaintiff was confused by Exhibits A, B and C.

47. The unsophisticated consumer would be confused by Exhibits A, B and C.

48. Plaintiff had to spend time and money investigating Exhibits A, B and C.

49. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A, B and C.

50. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*,

No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

51. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

52. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt.

53. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

54. 15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

7

Case 2:17-cv-00365-LA    Filed 03/10/17    Page 7 of 10    Document 1

55. The Seventh Circuit has held that a debt collector must state the amount of the debt without "obscur[ing] it by adding confusing other information (or misinformation)." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 2000 U.S. App. LEXIS 12178 (7th Cir. Ill. 2000); *Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir. 2000); *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir. 1997).

## COUNT I – FDCPA

56. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

57. Claim I is brought against Defendant ACS.

58. ACS's and Amerimark's letters are misleading and confusing to the unsophisticated consumer, in that the amounts due for the same account are different, despite no payment being made.

59. The unsophisticated consumer would have no idea what the actual balance was, or whether ACS or Amerimark were attempting to collect the past due balance to bring the account current, or if they had accelerated the debt and were collecting the entire balance.

60. ACS misrepresented the amount of the debt, in violation of 15 U.S.C. § 1692e(2)(a) and 15 U.S.C. § 1692g.

61. ACS's letter is confusing to the unsophisticated consumer, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(a) and 1692g(a)(1).

## COUNT II – WCA

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. Count II is brought against both Defendants.

64. Amerimark engaged ACS to collect a debt from Plaintiff.

65. As Amerimark is a debt collector under Wisconsin law, Amerimark is responsible for WCA violations in ACS's letter and for Amerimark's own conduct.

66. <u>Exhibits B and C</u> mislead and confuse the unsophisticated consumer, in that the balances stated for the same account are different, despite no payment being made.

67. Defendants violated Wis. Stat. § 427.104(1)(h).

## CLASS ALLEGATIONS

68. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent collection letters in the form represented by <u>Exhibits B and C</u> to the complaint in this action within 30 days of each other, (c) in which the "minimum amount due" in Amerimark's statement and the "TOTAL DUE" in ACS's letter were different, and (d) the consumer did not make a payment between the sending of the earlier and later letters, (e) seeking to collect a debt for personal, family or household purposes, (f) between March 10, 2016 and March 10, 2017, inclusive, (h) that was not returned by the postal service.

69. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

70. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692g(a)(1) and Wis. Stat. § 427.104(1)(h).

71. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

9

72. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

73. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

74. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: March 10, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com